Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel XII

| ROSA TORIBIO<br>Recurrida<br><br>*v.*<br><br>ALTAGRACIA "ARDENIS" DURÁN FARIÑA, H/N/C HOGAR LA FE Y LA ESPERANZA Y/O LA FE Y LA ESPERANZA, INC.<br>Peticionaria | TA2025CE00624 | *Certiorari* procedente del Tribunal de Primera de Instancias, Sala de San Juan<br><br>Caso Núm. SJ2023CV12046<br><br>Sobre: Reclamación por Servicios Prestados y Derechos Laborales al amparo de la Ley Núm. 180, Núm. 17 y Núm. 379 y de la Normativa Laboral anterior al año 2017 |
|---|---|---|

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli

Adames Soto, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 18 de diciembre de 2025

Comparece la Sra. Altagracia "Ardenis" Durán Fariña, H/N/C Hogar La Fe y La Esperanza y/o Hogar La Fe y La Esperanza, Inc. (señora Durán Fariña o peticionaria), a través de recurso de *certiorari,* solicitando que revoquemos una *Resolución* emitida por el Tribunal de Primera Instancia, Sala de San Juan, (TPI), el 15 de septiembre de 2025. En el contexto de un pleito laboral, mediante dicho dictamen el foro primario declaró *No Ha Lugar* la *Solicitud de Sentencia Sumaria y/o Desestimación* instada por la señora Durán Fariña.

Adelantamos que, examinada la totalidad del expediente, hemos decidido *Denegar* expedir el recurso solicitado.

## I. Recuento procesal pertinente

En la *Resolución* recurrida el tribunal *a quo* enumeró veintiséis hechos como incontrovertidos, cuyo contenido es, esencialmente, un recuento procesal sobre incidencias previas a presentación de la *Demanda*, que tiene tangencia en la consideración de los señalamientos de error alzados en el recurso de *certiorari,* y por ello la reproducimos a continuación[1]:

1. La querellada Altagracia "Ardenis" Durán Fariña (Durán Fariña) conoce a la querellante Rosa Toribio (Toribio).

2. Para el año 2011, Durán Fariña entrevistó a Toribio con relación a un empleo como cuidadora de personas envejecientes.

3. En el 2011, Toribio empezó a trabajar bajo las órdenes de Durán Fariña.

4. Toribio trabajó, desde el 1 de junio de 2011 hasta el 30 abril de 2013, en un hogar para cuido de ancianos que Durán Fariña dirigía.

5. Durán Fariña tuvo la idea de incorporar una entidad sin fines de lucro llamada Hogar La Fe y Esperanza, Inc. en el Departamento de Estado.

6. Hogar La Fe y Esperanza, Inc. fue incorporada el 3 de febrero de 2012.

7. Para las fechas relevantes, Durán Fariña advino en conocimiento de que Toribio acudió al Departamento de Trabajo y Recursos Humanos.

8. El Departamento de Trabajo y Recursos Humanos le envió correspondencia a Durán Fariña con relación al caso A1-D1-SL-0012-13 presentado por Toribio.

9. El Departamento de Trabajo y Recursos Humanos citó a Durán Fariña con relación al caso A1- D1- SL-0012-13 presentado por Toribio.

10. Durán Fariña supo que el Departamento de Trabajo elevó el asunto de la querellante Toribio al Negociado de Asuntos Legales del Departamento del Trabajo, bajo el caso NAL 45745.

11. El Negociado de Asuntos Legales del Departamento del Trabajo envió correspondencia a Durán Fariña con relación al caso NAL 45745.

12. Según los documentos preparados por el Negociado de Normas del Trabajo del Departamento del Trabajo y Recursos Humanos, con fecha del 28 de abril de 2014, en el caso A1-01-SL-0012-13 y al amparo de la Ley Núm. 379-1948, supra,

---

[1] Apéndice del recurso de *certiorari*, págs. 166-169. Hemos prescindido de las notas al calce incluidas en el original.

Toribio reclamó una compensación adeudada en el pago de las nóminas con las siguientes fechas:

i. 5 de junio de 2011 – 31 de julio de 2011
ii. 2 de octubre de 2011 – 27 de noviembre de 2011
iii. 7 de octubre de 2012 – 25 de noviembre de 2012
iv. 2 de diciembre de 2012 – 27 de enero de 2013
v. 3 de febrero de 2013 – 31 de marzo de 2013
vi. 7 de abril de 2013 – 5 de mayo de 2013

13. Según los documentos preparados por el Negociado de Normas del Trabajo del Departamento del Trabajo y Recursos Humanos, con fecha del 28 de abril de 2014, en el caso A1-01-SL-0012-13 y al amparo de la Ley Núm. 17-1931, supra, Toribio reclamó el recibo de cheques sin fondo en las siguientes fechas:

i. 20 de octubre de 2012 (cheque # 221)
ii. 21 de noviembre de 2012 (cheque # 287)
iii. 13 de abril de 2013 (cheque # 1007)

14. Según los documentos preparados por el Negociado de Normas del Trabajo del Departamento del Trabajo y Recursos Humanos, con fecha del 28 de abril de 2014, en el caso A1-01-SL-0012-13 y al amparo de la Ley Núm. 180-1998, supra, Toribio reclamó una compensación por licencia de vacaciones para los siguientes periodos:

i. 1 de junio de 2011 – 31 de mayo de 2012
ii. 1 de junio de 2012 – 30 de abril de 2013

15. El 9 de julio de 2014, Durán Fariña presentó un Certificado de Disolución de la corporación Hogar la Fe y la Esperanza, Inc., registro 308672, ante el Departamento de Estado.

16. El 16 de noviembre de 2015, el Negociado de Asuntos Legales del Departamento del Trabajo y Recursos Humanos dio por terminada la reclamación Rosa Nelvy Toribio v. Hogar la Fe y la Esperanza, Inc., NAL 45745, ante la decisión de Toribio de llevar el caso por abogado particular.

17. El 24 de noviembre de 2015, Toribio presentó una Querella, en el caso civil KPE2015- 3538, al amparo del procedimiento sumario laboral establecido en la Ley Núm. 2 de 17 de octubre de 1961 (32 LPRA sec. 3118) en contra de Durán Fariña y Hogar la Fe y la Esperanza, Inc., bajo los mismos fundamentos de servicios prestados y no remunerados.

18. Durán Fariña advino en conocimiento del caso civil KPE2015-3538 presentado en su contra por Toribio. 20 19. El 18 de febrero de 2016, el Tribunal de Primera Instancia dictó Sentencia en rebeldía, en el caso civil KPE2015-3538, y concedió el remedio solicitado a la querellante Toribio.

19. El 21 de junio de 2016, el Tribunal de Apelaciones sostuvo que la anotación de rebeldía no procedía y modificó la sentencia recurrida, a los fines de que el foro primario determinara si Hogar la Fe y la Esperanza, Inc. fue emplazada conforme a Derecho.

20. El 1 de mayo de 2018, Durán Fariña presentó una petición de quiebras al amparo del Capítulo 13, en el que nombró a Rosa Nelvy Toribio como acreedora no garantizada.

21. El 8 de mayo de 2018, el Tribunal de Primera Instancia dictó Sentencia por paralización en el caso civil KPE2015-3538, a raíz de la antes mencionada petición de quiebras instada por Durán Fariña.

22. El 19 de diciembre de 2018, el Tribunal de Quiebras desestimó la petición de quiebras en el caso In Re: Altagracia Durán Fariña, 18-02421-ESL13.

23. El 24 de agosto de 2020, la querellante Toribio solicitó la reapertura del caso civil KPE2015-3538, la cual fue acogida.

24. El 1 de marzo de 2021, el Tribunal de Primera Instancia ordenó el archivo, sin perjuicio, del caso civil KPE2015-3538, conforme la Regla 39.2 (b) de Procedimiento Civil.

25. El 29 de abril de 2021, la referida Sentencia, en el caso civil KPE2015-3538, advino final y firme.

Pasado un tiempo desde que la Sentencia aludida adviniera final y firme, el 30 de diciembre de 2023, la señora Rosa Toribio instó una *Querella*[2] ante el TPI en contra de la señora Durán Fariña como patrono-querellado, *en su carácter personal y como sucesora con interés de Hogar la Fe y la Esperanza.* En síntesis, adujo haber sido contratada verbalmente por la querellada, por tiempo indefinido, rindiéndole servicios de cuido de pacientes y personas mayores de edad, desde el 1 de junio hasta el 30 de abril de 2013. Sin embargo, esgrimió que la relación laboral concluyó por causa de que la querellada empezó a pagarle con cheques sin fondo, y se negó a remediar esa situación. Añadió, que la querellada le obligaba a tomar turnos largos de trabajo, sin descansos, mediando una compensación inferior a la permitida. Por ello, reclamó como remedio lo siguiente: (1) el salario adeudado, al amparo de la Ley de Pago de Salarios, Ley Núm. 17 de 17 de abril de 1931, 29 LPRA sec. 171; (2) el pago de horas adicionales y el periodo de tomar alimentos, al amparo de la Ley para Establecer la Jornada de Trabajo en Puerto Rico, Ley Núm. 379 de 15 de mayo de 1948, 29 LPRA sec. 271; (3) el pago de vacaciones, al amparo de la Ley de Vacaciones y Licencia por Enfermedad de Puerto Rico, Ley Núm. 180 de 27 de junio de 1998, 29 LPRA sec. 250; más (4) una penalidad conforme a la ley.

---

[2] Entrada Núm. 1 de SUMAC, págs. 1-5.

Ante lo cual, el 28 de mayo de 2024, la señora Durán Fariña presentó *Contestación a la Querella*, negando la gran mayoría de las alegaciones, y esgrimiendo defensas afirmativas. Entre las referidas defensas afirmativas incluyó la de no ser la sucesora en interés de la corporación disuelta Hogar la Fe y la Esperanza, Inc., y tampoco haber sido patrono de la señora Toribio.

Habiendo concluido el descubrimiento de prueba, la señora Durán Fariña presentó la *Solicitud de Sentencia Sumaria y/o Desestimación* a la que hicimos referencia en la introducción. En lo relativo a los hechos que promovió como incontrovertidos, la querellada enumeró los siguientes:

1. El HOGAR LA FE ESPERANZA, INC. es una corporación disuelta.

2. El HOGAR LA FE ESPERANZA, INC. dejó de existir en el 2014.

3. El caso Civil Num. KPE2015-3538 (906) al cual se hace referencia en el párrafo nueve (9) de la querella instada fue desestimado sin perjuicio el 1 de marzo del 2021 por falta de interés de la querellante.

4. La querellante no radicó reclamación de naturaleza alguna en contra de la Sra. Altagracia Ardenis Durán Fariña en el Negociado de Normas del Trabajo del Departamento del Trabajo de Puerto Rico. En cambio, esta fue instada en contra de su patrono Hogar La Fe y la Esperanza, caso que fue cerrado por decisión de la querellante el 16 de noviembre del 2015, caso Num. A1-D1-SL-0012-13.[3]

A renglón seguido, la peticionaria arguyó que las reclamaciones esbozadas en la *Querella*, **aún bajo el estado de Derecho anterior al 2017**, estaban prescritas. (Énfasis provisto). Sobre esto, sostuvo que no había sido incluida como parte en su carácter personal, en la reclamación iniciada en el Negociado de Normas del Trabajo, la cual fue dirigida solamente contra el Hogar la Fe y la Esperanza, por lo que tal acción administrativa no interrumpió el término para instar una reclamación judicial en su contra. Además, adujo que la querellante se había limitado a alegar de manera conclusiva, infundada y superficial, sin especificar razones y/o fundamentos, que la querellada presumiblemente se valió de

---

[3] Entrada Núm. 30 de SUMAC, pág. 4.

una "falsa estructura corporativa sin fines de lucro" en violación a la ley, moral y orden público, sin incluir un solo hecho demostrativo para justificar tal alegación.

Ante ello, 14 de febrero de 2025, la señora Toribio instó *Oposición a Solicitud de Sentencia Sumaria y/o Desestimación*. Allí, luego de presentar argumentos en contra de la caracterización que hiciera la parte peticionaria sobre sus alegaciones, y cuestionar de igual forma los hechos enumerados como incontrovertidos, pasó a elaborar sobre las razones por las cuales la causa de acción no estaba prescrita, y las alegaciones contenidas en la *Demanda* resultaban plausibles.[4]

Con mayor especificidad, en dicho escrito la recurrida aseveró que su causa de acción se regía por las leyes laborales previas a la Ley de Transformación y Flexibilidad Laboral, Ley Núm. 4-2017, 29 LPRA sec. 121, cuyo término prescriptivo era de tres años y no de un año. A tenor con esto, sostuvo que la primera querella presentada en el 2015 fue instada de manera oportuna, (laboró hasta abril de 2013), interrumpiendo el término prescriptivo de la causa de acción, y la segunda Querella presentada también se instó dentro del término de tres años, a partir de la desestimación sin perjuicio de su primera causa de acción. En el otro tema alzado por la parte peticionaria en su moción dispositiva, la señora Toribio señaló que la personalidad jurídica de una corporación se extendía por tres años a partir de su disolución, o hasta que se ejecutaran la sentencias o decretos cuando hubiese una acción entablada en su contra. Por ello, expresó que el mero hecho de que se hubiese disuelto la entidad Hogar la Fe y la Esperanza, Inc. no absolvía a la señora Durán Fariña de responder por los pasivos corporativos. Sobre esto también aseveró que la doctrina de actos propios impedía que la señora Durán Fariña alegase que no respondía por un pasivo patrimonial, cuando así fue reconocida por la Corte de Quiebras al comparecer a dichos procesos como acreedora.

---

[4] Entrada Núm. 35 de SUMAC.

Examinada la moción dispositiva y el escrito en oposición a esta, el tribunal *a quo* declaró *No Ha Lugar* la *Solicitud de Sentencia Sumaria y/o Desestimación* instada por la aquí peticionaria.

Al estar inconforme con dicha determinación, la señora Durán Fariña acude ante nosotros, alzando los siguientes señalamientos de error:

> **PRIMER ERROR:** Erró el Honorable Tribunal de Primera Instancia al haber declarado no ha lugar la *Solicitud de Sentencia Sumaria* presentada por la parte peticionaria a pesar de que la recurrida no alegó de manera específica, mucho menos demostró, en claro incumplimiento con la falta de especificidad que requiere la Regla 6.1 de Procedimiento Civil vigente, que la co-peticionaria Altagracia ¨Aldenis¨ Durán Fariña había sido el patrono de la parte recurrida durante el tiempo en que esta reclama que se le adeudan salarios.
>
> **SEGUNDO ERROR:** Erró el Honorable Tribunal de Primera Instancia al haber declarado no ha lugar la solicitud de sentencia sumaria presentada por la parte peticionaria a pesar de que la acción instada en su carácter personal en contra de la co-peticionaria Altagracia "Aldenis" Durán Fariña estaba prescrita.
>
> **TERCER ERROR:** Erró el Honorable Tribunal de Primera Instancia al haber declarado no ha lugar la solicitud de sentencia sumaria presentada por la parte peticionaria compareciente a pesar de que la parte recurrida no alegó y mucho menos evidenció que se aplicaba la doctrina de descorrer el velo corporativo o de un solo patrono al este haber alegado que la co-peticionaria compareciente Altagracia ¨Aldenis¨ Durán Fariña era la ¨sucesora con interés¨ de la Fe y la Esperanza, Inc.

En respuesta, la recurrida también acudió ante nosotros, mediante *Oposición a la Expedición del Auto de Certiorari con Solicitud de Honorarios y Sanciones.*

Estamos en posición de resolver.

## II. Exposición de Derecho

a.

El auto de *certiorari* permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *800 Ponce de León Corp. v. American International Insurance,* 205 DPR 163, 174 (2020); *Municipio Autónomo de Caguas v. JRO Construction,* 201 DPR 703, 710 (2019); *Medina Nazario v. McNeil Healthcare LLC.,* 194 DPR 723, 728 (2016). Es, en esencia, un recurso extraordinario mediante el cual se solicita al tribunal de superior jerarquía la corrección de un error cometido por el tribunal inferior. *García v. Padró,* 165 DPR 324, 334 (2005). La expedición del auto

descansa en la sana discreción del tribunal, y encuentra su característica distintiva, precisamente, en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *Municipio Autónomo de Caguas v. JRO Construction,* supra*,* pág. 711. El concepto discreción implica la facultad de elegir entre diversas opciones. *IG Builders et al. v. BBVAPR,* 185 DPR 307, 338 (2012). Claro, la discreción judicial no es irrestricta y ha sido definida como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *Municipio Autónomo de Caguas v. JRO Construction,* supra*,* págs. 711-712; *Negrón v. Srio. de Justicia,* 154 DPR 79, 91 (2001).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52, establece, en lo pertinente, que el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, será expedido por el Tribunal de Apelaciones cuando se recurre de: (1) una resolución u orden bajo la Regla 56 (Remedios Provisionales) y la Regla 57 (*Injunction*) de Procedimiento Civil; (2) **la denegatoria de una moción de carácter dispositivo**. (Énfasis provisto).

A tenor, una vez determinado que el asunto del cual se recurre se encuentra dentro de alguna de las materias contempladas en la Regla 52.1, *supra,* entonces procede evaluar si a la luz de los criterios enumerados en la Regla 40 de nuestro Reglamento del Tribunal de Apelaciones[5], según enmendado, In re Aprob. Enmdas. Reglamento TA, 2025 TSPR 42, pág. __,

---

[5]　A.　Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos, son contrarios a derecho.

B.　Si la situación de hechos planteada es la más indicada para el análisis del problema.

C.　Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D.　Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberá ser elevados, o de alegatos más elaborados.

E.　Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F.　Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G.　Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

215 DPR __ (2025); se justifica nuestra intervención. Con todo, se ha de considerar que ninguno de los criterios contenidos en la Regla 40 citada, es determinante por sí solo para el ejercicio de nuestra jurisdicción. *García v. Padró, supra.*

En este ejercicio, nuestro máximo foro ha expresado que un tribunal apelativo no intervendrá con las determinaciones interlocutorias discrecionales procesales de un tribunal sentenciador en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Argüello v. Argüello*, 155 DPR 62, 78-79 (2001). Cónsono con esto, el mismo alto foro ha advertido que nuestro ordenamiento jurídico desfavorece la revisión de las determinaciones interlocutorias. *Medina Nazario v. Mcneil Healthcare LLC*, supra, pág. 730. Además, en su mayor parte, las determinaciones interlocutorias pueden esperar hasta la conclusión final del caso para ser revisadas en apelación, conjuntamente con la sentencia dictada en el pleito. *IG Builders et al. v. BBVAPR,* supra, pág. 336.

Relacionado con la oración que precede, conviene señalar que la denegatoria de un tribunal apelativo a expedir un recurso de *certiorari* no implica que el dictamen revisado esté libre de errores o que constituya una adjudicación en los méritos. *Cacho Pérez v. Hatton Gotay*, 195 DPR 1, 12 (2016). Por el contrario, es corolario del ejercicio de la facultad discrecional del foro apelativo intermedio para no intervenir a destiempo con el trámite pautado por el foro de instancia. *Torres Martí v. Torres Gigliotty*, 175 DPR 83, 98 (2008). Por esto, la denegatoria a expedir un recurso de *certiorari* tampoco constituye la ley del caso. *Cacho Pérez v. Hatton Gotay*, supra.

b.

El propósito de las Reglas de Procedimiento Civil es proveer a las partes que acuden a un tribunal una "solución justa, rápida y económica de todo procedimiento". 32 LPRA Ap. V, R.1; *González Santiago v. Baxter Healthcare,* 202 DPR 281, 290 (2019); *Roldan Flores v. M. Cuebas et al., 199* DPR 664, 676 (2018); *Rodríguez Méndez et al. v. Laser Eye,* 195 DPR

769, 785 (2016), *Oriental Bank v. Perapi et al.*, 192 DPR 7, 25 (2014). La sentencia sumaria hace viable este objetivo al ser un mecanismo procesal que le permite al tribunal dictar sentencia sobre la totalidad de una reclamación, o cualquier controversia comprendida en ésta, sin la necesidad de celebrar una vista evidenciaria. J. A. Echevarría Vargas, *Procedimiento Civil Puertorriqueño*, 1era ed., Colombia, 2012, pág. 218. Procede dictar sentencia sumaria si "las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia si las hubiere, acreditan la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y pertinente y, además, si el derecho aplicable así lo justifica". *González Santiago v. Baxter Healthcare,* supra*; Roldan Flores v. M. Cuebas et al.,* supra; *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 225 (2015), *SLG Zapata-Rivera v. J. F. Montalvo*, 189 DPR 414, 430 (2013).

La mera existencia de "una controversia de hecho es suficiente para derrotar una moción de sentencia sumaria... cuando causa en el tribunal una duda real y sustancial sobre algún hecho relevante y pertinente". *Pepsi-Cola v. Mun. Cidra et al.,* 186 DPR 713, 756 (2012). Se considera un hecho esencial y pertinente, aquél que puede afectar el resultado de la reclamación acorde al derecho sustantivo aplicable. *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).

Sin embargo, la duda para impedir que se dicte sentencia sumaria no puede ser cualquiera, sino que debe ser de tal grado que "permita concluir que hay una controversia real y sustancial sobre hechos relevantes y pertinentes". *Ramos Pérez v. Univisión*, supra, págs. 213-214.

Dicho lo anterior, es esencial reconocer que la Regla 36 de las de Procedimiento Civil, 32 LPRA Ap. V, R.36, establece de manera específica los requisitos de forma con los que debe cumplir la parte que promueve la moción de sentencia sumaria, así como la parte que se opone a ella. En lo pertinente, la parte promovente debe exponer un listado de hechos no

controvertidos, desglosándolos en párrafos debidamente numerados y, para cada uno de ellos, especificar la página o el párrafo de la declaración jurada u otra prueba admisible que lo apoya. Regla 36.3(a) de Procedimiento Civil, 32 LPRA Ap. V.

A su vez, la parte que se opone a la moción de sentencia sumaria está obligada a citar específicamente los párrafos según enumerados por el promovente que entiende están en controversia y, para cada uno de los que pretende controvertir, detallar la evidencia admisible que sostiene su impugnación con cita a la página o sección pertinente. Regla 36.3(b), 32 LPRA Ap. V; *Meléndez González et al. v. M. Cuebas*, 193 DPR 100,137 (2015).

Nuestro más alto foro ha manifestado que "a menos que las alegaciones contenidas en la moción de sentencia sumaria queden debidamente controvertidas, éstas podrían ser admitidas y, de proceder en derecho su reclamo, podría dictarse sentencia sumaria a favor de quien promueve". *Meléndez González et al. v. M. Cuebas*, supra, pág. 137.

### A. Función revisora del foro apelativo con respecto a la sentencia sumaria dictada por el foro primario

En el caso de revisar sentencias del Tribunal de Primera Instancia dictadas mediante el mecanismo de sentencias sumarias o resolución que deniega su aplicación, nuestro Tribunal de Apelaciones se encuentra en la misma posición que el tribunal inferior para evaluar su procedencia. *Meléndez González et al. v. M. Cuebas*, supra. Los criterios a seguir por este foro intermedio al atender la revisión de una sentencia sumaria dictada por el foro primario han sido enumerados con exactitud por nuestro Tribunal Supremo. *Íd.* A tenor, el Tribunal de Apelaciones debe:

1) examinar de *novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario;

2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra;*

3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos;

4) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.

Además, al revisar la determinación del TPI respecto a una sentencia sumaria, estamos limitados de dos maneras; (1) solo podemos considerar los documentos que se presentaron ante el foro de primera instancia, (2) solo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. *Meléndez González, et al. v. M. Cuebas*, supra. El primer punto se enfoca en que las partes que recurren a un foro apelativo no pueden litigar asuntos que no fueron traídos a la atención del foro de instancia. Mientras que el segundo limita la facultad del foro apelativo a revisar si en el caso ante su consideración existen controversias reales en cuanto a los hechos materiales, pero no puede adjudicarlos. *Íd.* en la pág. 115. También, se ha aclarado que al foro apelativo le es vedado adjudicar los hechos materiales esenciales en disputa, porque dicha tarea le corresponde al foro de primera instancia. *Vera v. Bravo*, 161 DPR 308, 335 (2004).

c.

La Regla 6.1 de Procedimiento Civil de Puerto Rico de 2009 requiere que la parte que solicite un remedio incluya en sus alegaciones lo siguiente:

(1) una relación sucinta y sencilla de los hechos demostrativos de que la parte peticionaria tiene derecho a un remedio, y
(2) una solicitud del remedio a que crea tener derecho. Podrán ser solicitados remedios alternativos o de diversa naturaleza. 32 LPRA Ap. V, R. 6.1.

Sobre la regla citada nuestro Tribunal Supremo ha dicho que nuestro ordenamiento procesal *no establece requisitos complicados para la redacción de una demanda, meramente, se exige que el escrito incluya una relación sucinta y sencilla de los hechos demostrativos de que la parte peticionaria*

*tiene derecho a un remedio. Torres v. Rivera León*, 204 DPR 20, 40 (2020). Por tanto, *no tienen que exponerse detalladamente en la demanda todos los hechos que dan base a la reclamación.* Id, citando el *Informe de Reglas de Procedimiento Civil*, Secretariado de la Conferencia Judicial y Notarial, diciembre 2007, Vol. I, pág. 70.

En la misma Opinión al alto foro señala que, de igual manera, la Regla 6.5(a) de Procedimiento Civil de 2009, 32 LPRA Ap. V, especifica que "[c]ada aseveración en una alegación *será sencilla, concisa y directa* sin que sea necesario valerse de fórmulas técnicas en el proceso de redacción". Id. A lo que se añade que las alegaciones se interpretarán de manera conjunta y liberalmente a favor de la parte demandante, con el objetivo de hacer justicia. Id; *Torres, Torres v. Torres et al.,* 179 DPR 481 (2010); *Álamo v. Supermercado Grande, Inc.,* 158 DPR 93 (2002); *León v. Rest. El Tropical,* 154 DPR 249 (2001).

Es necesario acentuar que la finalidad esencial de las alegaciones *es alertar a la parte adversa en el proceso sobre los hechos y las reclamaciones a las que debe hacer frente en el transcurso del trámite judicial. De manera que la información provista en la demanda debe estar a tono con los requisitos mínimos de notificación según requiere el debido proceso de ley.* Id.

Por último, en la Opinión citada también a acude al tratado del profesor Rafael Hernández Colón para advertir que:

> La R[egla] 6.1 [...] impone al demandante una obligación relativamente leniente. Un demandante cumple con la exigencia de la regla al notificar al demandado de su reclamación y del remedio de tal modo que permita al demandado formular su contestación. [...] No obstante, si bien el deber que se le exige al demandante es bastante liberal y se le requiere brevedad en su exposición, la alegación debe aún contener la suficiencia fáctica que se necesita para que el demandado reciba una adecuada notificación sobre lo que se le reclama y la base que la sustenta. R. Hernández Colón, *Derecho procesal civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, pág. 287.

d.

Al disponer sobre las formas en que se puede interrumpir la prescripción de las acciones, el Artículo 1197 del Código Civil de Puerto Rico de 2020 establece las que sigue:

> (a) mediante la presentación de la demanda judicial o de la reclamación administrativa o arbitral por el acreedor contra el deudor, en resguardo del derecho que le pertenece [...]
> (b) por una reclamación extrajudicial hecha por el acreedor, dirigida al deudor; o
> (c) por el reconocimiento de la obligación por el deudor.
> Producida la interrupción, comienza nuevamente a transcurrir el cómputo del plazo prescriptivo. (31 LPRA sec. 9489).

Conforme a esto, ha sido reconocido dos tipos de interrupciones del término prescriptivo: la interrupción simple, de carácter instantáneo, y la interrupción de congelación, de carácter duradero.

> En la interrupción simple, el acto interruptor inicia un nuevo término prescriptivo, que comenzará a computarse inmediatamente, es decir, desde que ocurre el acto interruptor. En la congelación, al igual que en la interrupción simple, el acto interruptor también inicia un nuevo término prescriptivo, sin embargo[,] este habrá de comenzar a computarse posteriormente. *Díaz Santiago v. International Textiles*, 195 DPR 862 (2016).

Lo anterior debe ser leído en conjunto con los términos prescriptivos dispuestos por las leyes especiales, según la materia de que se trate. Así, en reclamaciones labores, cabría acudir a la Ley de Transformación y Flexibilidad Laboral, Ley Núm. 4-2017, (Ley 4), 29 LPRA sec. 121, para inquirir sobre el término prescriptivo que un obrero tiene para iniciar la causa de acción contra su patrono. Según el Art.10 de la referida ley especial, el término prescriptivo para reclamar derechos bajo sus disposiciones es de un año, a partir de la fecha en que el empleado cesó en su empleo. 29 LPRA SEC. 250(J)

Sin embargo, el Artículo 2.18 de la misma Ley 4 también provee que "las causas de acción surgidas previo a la vigencia de esta Ley tendrán el término prescriptivo bajo el ordenamiento jurídico anterior aplicable""". 29 LPRA sec. 122q. De modo que correspondería considerar en tal caso el Art. 12 de la Ley Núm. 180-1998 a los efectos de que "por el transcurso de tres

(3) años prescribirá la acción en reclamación de salarios que pueda tener un empleado contra su patrono".

**III. Aplicación del Derecho a los hechos**

a.

Comenzamos por reconocer que la Regla 52.1 de Procedimiento Civil, supra, expresamente nos concede discreción para expedir el recurso de *certiorari*, en casos de denegatoria de una moción dispositiva. Tocándonos atender, precisamente, la denegatoria de una moción de sentencia sumaria, *ergo* una moción dispositiva, bien podríamos decidir intervenir con la resolución interlocutoria bajo revisión. Sin embargo, la referida regla procesal permite ejercitar nuestra discreción, es decir, determinar si acogemos o no expedir el recurso de *certiorari*, cuya esencial particularidad sigue siendo su discrecionalidad.

b.

De ordinario, al revisar una denegatoria de moción sumaria iniciamos por examinar el cumplimiento con las formalidades que la Regla 36.3 de Procedimiento Civil, supra, les requiere a las partes, para entonces verificar si persisten o no hechos en controversia que ameriten la continuación de los procesos, es decir, la celebración del juicio. Sin embargo, en los señalamientos de errores alzados por la parte peticionaria en el recurso de *certiorari* no se impugnaron, ni se incluyó tema alguno, relacionado a las determinaciones de hechos incontrovertidos alcanzadas por el TPI, como tampoco se cuestionó la enumeración de hechos que continúan en controversia y merecen ser dilucidados en juicio plenario. Esto resulta cónsono con la discusión de los señalamientos de error incluida en el recurso de *certiorari*, que versa más bien sobre asuntos de derecho, antes que de hechos.

Por tanto, aunque la revisión de las denegatorias de sentencia sumaria por parte de este foro intermedio acontece *de novo*, ello ha de verse en conjunto con la regla básica fundamental de nuestro derecho procesal

apelativo que dicta que todo escrito presentado ante un tribunal apelativo "señale, discuta y fundamente el error o los errores que le imputan al foro apelado". *Ortiz v. Holsum*, 190 DPR 511, 526 (2014). Ante la ausencia de señalamientos de errores sobre las determinaciones de hechos incontrovertidos alcanzadas, procedemos directamente a examinar los asuntos de derecho planteados, aunque de manera breve, pues ya hemos adelantado nuestra denegatoria a expedir el recurso solicitado, al no apreciar elementos que justifiquen nuestra intervención.

c.

En el primer error señalado se aduce, en síntesis, que la parte recurrida no cumplió con los requerimientos de la Regla 6.1 de Procedimiento Civil, supra, en tanto las alegaciones incluidas en la *Demanda* adolecen de especificidad pues, para tratar de justificar la inclusión de la señora Durán Fariña como copeticionaria, se limitó a alegar que esta *se valió de una falsa estructura corporativa sin fines de lucro*. Sobre esto, cabe reiterar que los tribunales debemos tomar en consideración que la Regla 6.1 citada, *no establece requisitos complicados para la redacción de una demanda, meramente, se exige que el escrito incluya una relación sucinta y sencilla de los hechos demostrativos de que la parte peticionaria tiene derecho a un remedio* y; *no tienen que exponerse detalladamente en la demanda todos los hechos que dan base a la reclamación. Torres v. Rivera León*, supra. pág. 40.

Nótese, además, que, aunque estamos considerando una denegatoria de sentencia sumaria, este asunto no nos llama a aquilatar prueba documental alguna incluida en la moción de sentencia sumaria, o su oposición, sino solo a hacer lectura de las alegaciones contenidas en la *Demanda*, semejando más el ejercicio adjudicativo requerido para una moción de desestimación bajo la Regla 10.1 de Procedimiento Civil, 32 LPRA Ap. V. Como se sabe, tal ejercicio precisa *tomar como ciertos todos los hechos bien alegados en la demanda, y considerarlos de la manera más*

*favorable a la parte demandante. Bonnelly Sagrado v. United Surety & Indemity Co.*, 207 DPR 715, 722 (2021).

En cualquier caso, la lectura de la referida *Demanda* muestra que la parte recurrida incluyó entre sus alegaciones la requerida *relación sucinta y sencilla* sobre los hechos que dan base a sostener, al menos en esta etapa del proceso, la causa de acción contra la señora Durán Fariña en su carácter personal. Así, por ejemplo, en el tercer inciso de la *Demanda* se alegó que "el patrono querellado Altagracia "Ardenis" Durán Fariña, persona natural que opera o ha operado en su carácter personal y bajo el nombre de negocios HOGAR LA FE Y ESPERANZA y/o HOGAR LA FE ESPERANZA INC"[6]. Luego, en el inciso cuarto se alegó que "Altagracia Ardenis Durán Fariña es la sucesora en interés y/o la responsable por los asuntos de la corporación disuelta HOGAR LA FE ESPERANZA INC., anteriormente localizada en la siguiente dirección: Urbanización La Merced, 518 Calle Rafael Alomar, San Juan, PR 00918". A renglón seguido se afirmó que, "Altagracia *Ardenis* Durán Fariña continúa haciendo negocios, aunque se desconoce el paradero de su nuevo establecimiento comercial"[7]. Tales alegaciones cumplen sin dificultad el requerimiento de debido proceso de ley que exige dar a conocer, o notificar a la parte demandada a grandes rasgos, las alegaciones dirigidas en su contra para que esté en posición de defenderse.

Además de estar limitados a la sola lectura de las alegaciones, según el primer error planteado, lo cierto es que en la moción de sentencia sumaria no se presentó documentación alguna para impugnar o establecer lo contrario a las alegaciones citadas en el párrafo que precede, lo que, de suyo, justificaba la denegatoria a dicha petición por el TPI, y constituye otra razón para no intervenir con el curso decisorio seguido por el foro recurrido en este asunto.

---

[6] Entrada Núm. 1 de SUMAC.
[7] *Id.*

d.

En su segundo señalamiento de error la parte peticionaria aduce que la causa de acción dirigida contra la señora Durán Fariña en su carácter personal está prescrita, al no haber sido incluida como parte en la querella instada contra el Hogar la Fe y Esperanza, ante el Negociado de Normas del Trabajo del Departamento del Trabajo, el 28 de abril de 2014.

No obstante, según la relación de hechos incontrovertidos enumerados en la Sentencia recurrida, que reproducimos y no han sido impugnados, lo cierto es que, aun partiendo de la veracidad de la falta de inclusión de la señora Durán Fariña en su carácter personal en el proceso administrativo aludido, la causa de acción contra ante el Tribunal seguiría siendo oportuna, partiendo del término prescriptivo de tres años para instar una acción contra su patrono bajo la legislación laboral previa a la aprobación de la Ley 4[8]. Es decir, siendo el 30 de abril de 2013 la última fecha en que presuntamente laboró Toribio con la parte peticionaria, contaba con un término de tres años para instar demanda contra su patrono, y así lo hizo, el 24 de noviembre de 2015, incluyendo expresamente a la señora Durán Fariña como codemandada en su carácter personal.

Por último, la parte peticionaria sostiene que incidió el foro primario al no acoger la moción se sentencia sumaria, a pesar de que la parte recurrida *no alegó ni evidenció que aplicara la doctrina de descorrer el velo corporativo.*

---

[8] No nos hemos extendido en la discusión del término prescriptivo aplicable, si el previsto en la Ley 4 vigente o el estatuto derogado, en tanto no fue objeto de discusión por la parte peticionaria en su moción de sentencia sumaria, limitándose a aseverar lo siguiente sobre el tema, "aclaramos que la reclamación administrativa ante el Negociado de Normas del Trabajo presentada por la parte querellante no interrumpió el término para instar la reclamación judicial contra la Sra. Altagracia Ardenis Durán Fariña toda vez que esta no se incluyó como parte querellada en dicho procedimiento, por lo que no cumple con el requisito de identidad de propósitos y de parte con la acción judicial, razón por la que dicho trámite no interrumpió el termino prescriptivo para instar dicha acción. *Díaz Santiago vs. International Textiles*, 195 D.P.R. 862 869 (2016)", Entrada Núm. 30 de SUMAC, pág. 8. En su recurso de *certiorari* la parte volvió a repetir tal argumento, pág. 11, sin ahondar sobre el término prescriptivo aplicable, a pesar de que el TPI sí discutió el asunto en la Resolución recurrida.

Sobre lo anterior, es de ver que, aunque en su moción sentencia de sumaria la parte peticionaria aseveró que "Altagracia Ardenis Durán Fariña nunca ha sido el patrono de la parte querellante y que esta no es la sucesora o dueña con interés de la corporación disuelta Hogar La Fe Esperanza, Inc."[9] No presentó prueba documental alguna para sostener lo afirmado, descansando en meras alegaciones, lo que resulta insuficiente en derecho cuando se aquilata una moción de sentencia sumaria. De lo que se sigue que reputemos acertado el juicio del foro recurrido al identificar como un hecho a ser dilucido mediante juicio, el relativo a la alegada responsabilidad personal de la señora Durán Fariña, y si cabe reconocerle como patrono sucesor.

En definitiva, no vemos razones que justifiquen nuestra intervención con el curso decisorio seguido por el foro recurrido, ante la ausencia de pasión, prejuicio, parcialidad o error manifiesto, y por ello hemos determinado *Denegar* expedir el recurso discrecional solicitado.

**IV. Parte dispositiva**

*Denegamos* expedir el recurso de *certiorari* solicitado.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[9] Entrada Núm. 30 de SUMAC.